# IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF TEXAS DALLAS DIVISION

| | | |
|---|---|---|
| PILLAR INCOME ASSET MANAGEMENT, INC., TRANSCONTINENTAL REALTY INVESTORS INC, VILLAGER FWB APTS, LLC, FARNHAM PARK PATX, LLC, AND BRADFORD PHILLIPS,<br>    *Plaintiffs ,*<br>v.<br><br>DANIEL J. MOOS,<br>    *Defendant.*<br>v.<br><br>RENATA PETRYLIENE AND BIG RIVER NV, LLC<br>    *Intervenors*<br>v.<br><br>PILLAR INCOME ASSET MANAGEMENT, INC., TRANSCONTINENTAL REALTY INVESTORS, INC., AND BRADFORD PHILLIPS,<br>    *Counter-Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 3:26-CV-00694-O |

**INTERVENORS RESPONSE TO PLAINTIFFS PILLAR INCOME
ASSET MANAGEMENT, INC.'S AND TRANSCONTINENTAL REALTY INVESTORS,
INC.'S MOTION TO DISQUALIFY MARK L. JOHANSEN AND BLANK ROME LLP**
*(Refiled pursuant to ECF No. 57)*

**USE OF GENERATIVE ARTIFICIAL INTELLIGENCE**
Pursuant to Local Rule 7.2(f), counsel for Intervenors hereby discloses that generative artificial
intelligence was used in the preparation of this brief.

i

## TABLE OF CONTENTS

**II.  FACTUAL BACKGROUND** ..........................................................................................1

   A.  The Petryliene Lawsuit and the Underlying Transactions ............................................1

   B.  The Phillips Related Parties .........................................................................................2

   C.  The 2024 Subpoena, the Coordinated Deposition, and the Pre-Deposition Productions4

   D.  The Parallel Bennett Weston Discovery Dispute.........................................................8

   E.  The October 2024 Demand Letters and the October 2025 Joinder .............................10

   F.  The November 3, 2025 NDA and the May 2026 Three-Motion Sequence...................11

   G.  The Motion's Direct Effect on Intervenors................................................................13

**III.  ARGUMENT** ........................................................................................................**13**

   A.  Plaintiffs Failed to Confer in Violation of L.R. 7.1(a)................................................14

   B.  The NDA Does Not Reach Intervenors or Mr. Johansen............................................14

      1.  Mr. Johansen Is Not a "Moos Related Party" Under the NDA's Own Drafting ....14

      2.  Appendix A Expressly Excludes Intervenors .........................................................15

      3.  The NDA Cannot Reach Pre-NDA Conduct ..........................................................15

   C.  Pillar and TCI Lack Standing Under Yarn Processing ...............................................16

   D.  The Privilege Premise Fails: Intervenors Hold the Privilege......................................17

   E.  On the Meador/RSR Merits, the Decisive Factors Weigh Against Disqualification ...18

   F.  Nitla's "Actual Harm and No Lesser Remedy" Test Defeats the Motion....................20

   G.  Plaintiffs Waived Disqualification.............................................................................21

   H.  Disqualification Violates the Federalism Principles....................................................24

   I.  The Drastic Remedy Disserves Intervenors' Unique Interests....................................24

**IV.  CONCLUSION** ....................................................................................................**25**

**TABLE OF AUTHORITIES**

<u>**Cases**</u>

*Atlantic Coast Line R.R. Co. v. BLE, 398 U.S. 281 (1970)* ....................................................*24*

*Baker v. General Motors Corp., 522 U.S. 222 (1998)*....................................................*16*

*Basic Capital Mgmt. v. Dynex Commercial, 348 S.W.3d 894 (Tex. 2011)*..............................*19*

*Busby v. Harvey, 551 S.W.3d 184 (Tex. App.—Fort Worth 2017, pet. denied)*.......................*22*

*Colyer v. Smith, 50 F. Supp. 2d 966 (C.D. Cal. 1999)* ..............................................*17*

*Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343 (1985)*...................*1, 14, 18*

*Delaporte v. Preston Square, Inc., 680 S.W.2d 561 (Tex. App.—Dallas 1984, no writ)*.........*25*

*Donovan v. City of Dallas, 377 U.S. 408 (1964)* .................................................*13, 25*

*E.R.R. Presidents Conf. v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961)*...........................*15*

*FDIC v. U.S. Fire Ins. Co., 50 F.3d 1304 (5th Cir. 1995)*...............................................*17, 25*

*Fleetwood Enters., Inc. v. Gaskamp, 280 F.3d 1069 (5th Cir. 2002)*....................................*14*

*Franlink Inc. v. BTDS, Ltd., 50 F.4th 432 (5th Cir. 2022)* .........................................*16*

*Grant v. Thirteenth Court of Appeals, 888 S.W.2d 466 (Tex. 1994)* ......................................*23*

*Hendricks v. Barker, 523 S.W.3d 152 (Tex. App.—Houston [14th Dist.] 2016, no pet.)* ........*20*

*In re American Airlines, Inc., 972 F.2d 605 (5th Cir. 1992)*.................................................*20*

*In re Brown & Root Indus. Servs., LLC, No. 14-24-00608-CV, 2025 WL 597062 (Tex. App.—Houston [14th Dist.] Feb. 25, 2025, orig. proceeding)*................................................*22*

*In re K & L Auto Crushers, LLC, 627 S.W.3d 239 (Tex. 2021)*.........................................*3, 23*

*In re Marketing Investors Corp., 80 S.W.3d 44 (Tex. App.—Dallas 1998)*......................*18, 20*

*In re Meador, 968 S.W.2d 346 (Tex. 1998)* ..........................................*11, 19, 20, 22*

*In re Nitla S.A. de C.V., 92 S.W.3d 419 (Tex. 2002)*........................................................*21, 22*

*In re Parnham, 263 S.W.3d 97 (Tex. App.—Houston [1st Dist.] 2006, orig. proceeding)*......*19*

*In re RSR Corp., 475 S.W.3d 775 (Tex. 2015)* .................................................*10, 11*

*In re RSR Corp., 568 S.W.3d 663 (Tex. 2019) (per curiam)*....................................................*24*

*In re Yarn Processing Patent Validity Litig., 530 F.2d 83 (5th Cir. 1976)* ............................*17*

*In re Zaidi, No. 24-0245, 2026 WL 969266 (Tex. Apr. 10, 2026)* ..........................................*20*

*Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423 (1982)*....................*24*

*New Hampshire v. Maine, 532 U.S. 742 (2001)* ........................................................*16*

*PlainsCapital Bank v. Martin, 459 S.W.3d 550 (Tex. 2015)* ....................................................*15*

*Reed v. City of Arlington, 650 F.3d 571 (5th Cir. 2011) (en banc)*.........................................*18*

*Smith v. Abbott, 311 S.W.3d 62 (Tex. App.—Austin 2010, pet. denied)* .................................*22*

*United States v. Billingsley, 615 F.3d 404 (5th Cir. 2010)*......................................................25

*United States v. Nixon, 418 U.S. 683 (1974)* ...........................................................27

*Younger v. Harris, 401 U.S. 37 (1971)* ...................................................25

### **Rules and Statutes**

28 U.S.C. § 2283 (Anti-Injunction Act) ................................................................26

N.D. Tex. Local Rule 7.1(a) ..................................................................14

N.D. Tex. Local Rule 7.2(f) .......................................................................—

Tex. Disciplinary Rule 1.06 ..............................................................28

Tex. Disciplinary Rule 1.18 ...............................................................28

Tex. Disciplinary Rule 3.08 ...........................................................27–28

Tex. R. Civ. P. 21a(a)(1)........................................................7, 20, 25, 28

Tex. R. Civ. P. 176.1.............................................................................7, 23

Tex. R. Civ. P. 176.6(e) ........................................................................3, 23

Tex. R. Civ. P. 192.6...............................................................................3, 11, 23

Tex. R. Civ. P. 193.3...............................................................3, 11, 20, 22, 23

Tex. R. Civ. P. 193.3(d).......................................................................11, 20, 23

Tex. R. Civ. P. 199.2(b)(1) ....................................................................4, 23

Tex. R. Civ. P. 199.5(a)(1)....................................................................5, 12

Tex. R. Civ. P. 205.2................................................................................20

Model Rule 1.7.........................................................................................28

Model Rule 1.18.......................................................................................28

Model Rule 3.7(a)....................................................................................27

Intervenors Renata Petryliene and Big River NV, LLC ("Intervenors") respectfully file this Response to the Motion and Brief to Disqualify Mark L. Johansen ("Johansen") and Blank Rome LLP (the "Motion") filed by Plaintiffs Pillar Income Asset Management, Inc. ("Pillar") and Transcontinental Realty Investors, Inc. ("TCI") (collectively, "Plaintiffs"). [ECF 20, 21]. Intervenors join in and adopt in full the arguments, authorities, and evidentiary submissions set forth in Defendant Daniel J. Moos's response brief in opposition [ECF No. 35].

## I. FACTUAL BACKGROUND

### A. The Petryliene Lawsuit and the Underlying Transactions

The state-court action that gives rise to this dispute is *Petryliene v. Phillips*, No. DC-20-12534, pending in the 191st Judicial District Court of Dallas County, Texas (the "Petryliene Lawsuit"). It was filed in 2020 and concerns ownership of two HUD-financed apartment complexes: the Villager Apartments in Fort Walton Beach, Florida, and the Farnham Park Apartments in Port Arthur, Texas. The Plaintiffs in the Petryliene Lawsuit are Renata Petryliene; her wholly-owned entities Big River NV, LLC and Big River Farnham, LLC; and the property-holding entities through which her investments were acquired, IGCH Villager Associates, Ltd. and AMG Farnham Park, LLC. App. 0008 (Second Am. Pet. ¶¶ 4–8).

Ms. Petryliene acquired 100% of IGCH Villager Associates through Big River NV in 2015–2016, and 100% of AMG Farnham Park through Big River Farnham in 2018. *Id.* ¶¶ 89, 94, 105, 107, 109–110. HUD approved the latter Transfer of Physical Assets on July 15, 2019. *Id.* The Second Amended Petition alleges that after the August 2019 death of Gene Phillips, Plaintiff Bradford Phillips and other Phillips-related parties — including Plaintiffs Pillar and TCI — conspired to strip away Renata's ownership interest by transferring the apartment properties to two newly-created entities, Plaintiffs Villager FWB Apts, LLC and Farnham Park PATX, LLC. *Id.* ¶¶ 113, 133–134.

Importantly, and as explained further in Section D below, the privilege Plaintiffs assert in this Motion to Disqualify is asserted on behalf of Pillar and TCI for documents concerning IGCH

1

Villager Associates and AMG Farnham Park. Ms. Petryliene's entities — Big River NV and Big River Farnham — acquired 100% of those entities between 2015 and 2019. *Id.* ¶¶ 89, 94, 105, 107, 109–110. Under the displaced-manager rule of *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 349 (1985), the privilege over communications concerning those subsidiaries passed to Intervenors at the moment of acquisition.

On April 9, 2026, this Court recognized Intervenors' "direct, substantial, and legally protectable interest" in this action, found that the injunction would deprive Intervenors of "critical evidence needed to prosecute their claims," and held that Intervenors' interests "diverge from Moos's." ECF 17, at 2, 4–5. On April 13, 2026, Intervenors filed a Counterclaim in Intervention (ECF 19), pending and unadjudicated, seeking declaratory relief on the NDA and deposition issues raised by Plaintiffs.

### B. The Phillips Related Parties

Plaintiff Pillar Income Asset Management, Inc. ("Pillar") is the management entity for a corporate family that includes Plaintiff Transcontinental Realty Investors, Inc. ("TCI"), a publicly traded REIT, and the other Plaintiffs here: Bradford Phillips, Villager FWB Apts, LLC, and Farnham Park PATX, LLC. The NDA defines this corporate family as "the Phillips Related Parties." NDA, App. A (ECF 1-1).

TCI and its two affiliated publicly traded REITs — Income Opportunity Realty Investors, Inc. ("IORI") and American Realty Investors, Inc. ("ARI") — share common ownership and control, and Pillar serves as the external manager of all three. App. 0012 (Second Am. Pet. ¶¶ 28, 30). Pillar manages and controls hundreds of single-purpose subsidiary entities ultimately owned by TCI, ARI, and IORI, including the Villager and Farnham property-holding entities at issue here. *Id.* ¶ 33. To administer those subsidiaries day-to-day, Pillar appoints its own employees as nominal officers, even though those employees have no actual control or decision-making authority. *Id.* ¶ 34. Many of those subsidiaries have no employees, officers, or revenue of their own, and share Pillar's address, accountants, and attorneys. *Id.* ¶ 35. The Petryliene Plaintiffs allege that the

structure operates as "a complex web of organizations . . . to create a false appearance of separateness between these companies when none exists." *Id.* ¶ 41. The practical effect is that the documents Pillar and TCI now claim are privileged have, throughout the Petryliene Lawsuit, been produced and controlled through Pillar even as Pillar and TCI styled themselves "non-parties." Tex. R. Civ. P. 176.6(e), 192.6; cf. *In re K & L Auto Crushers, LLC*, 627 S.W.3d 239, 254 (Tex. 2021).

Pillar, TCI, and the other Phillips Related Parties have been continuously engaged in the Petryliene Lawsuit. They have appeared through multiple attorneys, including: Mitchell Madden and his firm, as counsel for Bradford Phillips, the related Phillips family defendants, Louis Corna (Pillar's Executive Vice President and General Counsel); the Pillar-controlled intervenors Dallas HRS Development, Inc. and JRG Investment Co., Inc.[1]; and Bennett, Weston, LaJone & Turner, P.C. ("BWLT") — the outside transactional law firm whose attorney-client privilege Plaintiffs invoke in this motion and which has historically represented multiple Pillar-affiliated entities, including Pillar, TCI, and the Pillar-controlled entities. Don Swaim of Cunningham Swaim, LLP — and subsequently Gray Reed — have appeared as Pillar's and TCI's designated state-court counsel since February 16, 2024, when Mr. Swaim filed Pillar's first motion in the Petryliene Lawsuit — more than six months before the Moos deposition at issue here. App. 0094 (Pillar Mot. to Quash, Feb. 16, 2024). On December 2, 2024, Swaim served on Pillar's and TCI's behalf a 200-entry privilege log identifying each document Pillar and TCI claimed was protected. App. 0195 (Pillar/TCI 200-Entry Privilege Log). The log states that "Pillar acted as agent and advisor to Transcontinental Realty Investors, Inc., who, directly or indirectly, was the client." App. 0198[2]

On October 15, 2025, the formal status caught up to operational reality. The 191st District

---

[1] Mr. Madden initially represented HRS and JRG as intervenors who are now represented by a different firm.

[2] Mr. Madden — counsel for Bradford Phillips and Bennett Weston — had also filed Motions to Quash on Pillar's behalf on November 14, 2023 and January 29, 2024, in response to Pillar deposition notices issued November 10, 2023 and January 3, 2024. Nikezic Decl. Exs. 4-A, 4-B. Through that period — five and seven months before the Moos deposition — Mr. Madden was protecting Pillar's interests by moving to quash its deposition through the Phillips defendants.

3

Court added Pillar, TCI, Villager FWB Apts, and Farnham Park PATX as party-defendants in the Petryliene Lawsuit by way of the Second Amended Petition. App. 0010–11 (Second Am. Pet. ¶¶ 17–22). The Motion to add these parties had been pending for over a year, since October 14, 2024.

Mr. Moos served as CEO of Pillar and President/CEO of TCI from March 2007 through August 2020. Moos App. 057 (Moos Decl. ¶ 1). After his departure, Mr. Moos brought breach-of-employment-contract claims against Pillar. In January 2024, a Dallas jury returned a verdict against Pillar of approximately $22 million in Mr. Moos's favor. Moos App. 001 (Johansen Decl. ¶ 2). Pillar's and TCI's Tex. R. Civ. P. 199.2(b)(1) corporate representative, Erik Johnson, testified under oath on May 14, 2025: "Daniel Moos has an adversarial position to both Pillar and TCI. He's in litigation with both of those companies." App. 0233 (Johnson Dep. Tr. 83:18–22).

Mr. Johansen has represented Mr. Moos for approximately five years across four state-court matters, including the Pillar Lawsuit verdict. Moos App. 001 (Johansen Decl. ¶ 2). He has never represented Pillar, TCI, or any other Plaintiff. *Id.* Mr. Johansen has served as Intervenors' Texas local counsel of record in the Petryliene Lawsuit continuously since October 8, 2024 — more than eighteen months. *Id.* ¶ 8.

Plaintiffs speculate and offer no evidentiary support for their suggestion that Mr. Johansen was in undisclosed retention discussions with Intervenors at the time of the September 17, 2024 Moos deposition (ECF 21, at 19). The contemporaneous record does not support that theory. At the time of the deposition, Intervenors' Texas local counsel was the Beckham Portela law firm. Moos App. 003 (Johansen Decl. ¶ 8). Mr. Johansen did not substitute as Intervenors' Texas local counsel until October 8, 2024 — after the deposition concluded. *Id.* The Beckham Portela engagement and Mr. Johansen's October 8, 2024 substitution document the chronology. *Id.*

C. **The 2024 Subpoena, the Coordinated Deposition, and the Pre-Deposition Productions**

Intervenors served the first Notice of Intention to Take the Oral Deposition of Daniel J. Moos on January 30, 2024, having identified Mr. Moos as a critical fact witness given his role as the former CEO of Pillar and TCI from March 2007 through August 2020. After three reschedules

at defense counsel's request, Intervenors transmitted the operative Fourth Amended Notice of Intention to Take Oral Deposition of Daniel J. Moos to all counsel — including Mr. Swaim and Mr. Madden — on July 23, 2024, setting the deposition for September 17, 2024. App. 0048 (Fourth Am. Notice of Intent, July 23, 2024). At that time, Swaim had already appeared on behalf of Pillar in the Petryliene Lawsuit as of February 16, 2024 and was on the Texas eFile service list, through which it received every subsequent filing in the state-court action. *See* Tex. R. Civ. P. 21a(a)(1).

Mr. Moos was personally served with the Subpoena Duces Tecum and Notice of Intention on April 29, 2024 in Mandeville, Louisiana. App. 0048 (Subpoena and Verified Return of Service). The Subpoena commanded Mr. Moos to appear and "remain from day to day until the deposition has been completed." *See* Tex. R. Civ. P. 199.5(a)(1) ("The witness must remain in attendance from day to day until the deposition is begun and completed."); Tex. R. Civ. P. 176.6(a) (subpoenaed witness "must remain at the place of deposition . . . from day to day until discharged").

The September 17, 2024 deposition was the product of months of coordinated scheduling. On July 9, 2024, Intervenors' counsel emailed all counsel — including Mr. Swaim and Mr. Madden — memorializing the dates the parties had agreed were available for deposition, including September 17, 2024; that same email expressly requested that Mr. Swaim advise on which of those dates Pillar was available. App. 0347 (Handal Supp. Decl., Nov. 1, 2024 ¶ 11). On July 30, 2024, Intervenors' counsel emailed all counsel proposed dates to reschedule the depositions of multiple witnesses, including Mr. Moos and the corporate representatives of Pillar and TCI. *Id.* ¶ 15. On July 31, 2024, Mr. Swaim confirmed that Pillar and TCI were available for deposition on October 2, 2024. *Id.* ¶ 16. At no point during this months-long coordination did any counsel — including Mr. Swaim or Mr. Madden — raise any objection to the Moos subpoena, its form, or its time and place.

In response to the subpoena and prior to the coordinated deposition, Mr. Moos made two pre-deposition document productions: on August 23, 2024 and on September 9, 2024. The productions were transmitted to all counsel. The documents were produced by Mr. Johansen and

5

his then-firm, Egan Nelson, LLP, on Mr. Moos's behalf. Some of the documents contained redactions. At no point before, during, or in the four weeks following the deposition was any privilege log produced or demanded, and at no point during that period did any counsel for Pillar, TCI, or any Phillips-related party discuss the redactions or assert any basis for them with Mr. Johansen.

At the September 17, 2024 deposition itself, Mr. Johansen stated the basis for the redactions on the record: "[W]e made this document production for the benefit of other counsel in the room. The redactions were made by us because they purported or appeared to us to be attorney-client communications. Pillar lawyers talking to Pillar or TCI lawyers." Moos Depo Tr. 204:1–7 (Sept. 17, 2024) (App. 0361). Mr. Madden personally appeared at the deposition on behalf of Bradford Phillips and cross-noticed Mr. Moos for continued deposition. Moos App. 003 (Johansen Decl. ¶ 6). At no point did Mr. Madden, or any other counsel raise any objection to Mr. Moos's productions or to his testimony on attorney-client privilege grounds. *Id.*

Mr. Moos also testified at length about the source and chain of custody of the documents. After his August 2020 departure from Pillar, Mr. Moos was locked out of Pillar's offices, and his personal and business files were retained at Pillar's premises for approximately two and a half months. Moos Depo Tr. 29:13–30:5. Pillar then voluntarily delivered those files to Mr. Moos, organized into approximately 16 to 17 banker's-box-sized bins, through his executive assistants who had access to his files at Pillar. *Id.* 26:4–30:5. Additional Pillar-supplied documents Mr. Moos believes belong to him remain in Pillar's possession. *Id.* 30:7–11. Mr. Madden did not, at the deposition, object to the bins, to Mr. Moos's possession of the documents, or to the source of the production.

The deposition testimony provided critical information regarding the Villager and Farnham transactions that was uniquely within Mr. Moos's knowledge given his role as former CEO of Pillar and TCI, and confirmed Intervenors' investment and ownership interest in those properties — testimony that was, and is, damaging to the Phillips Related Parties and that the Phillips Related Parties have since sought to suppress. The deposition recessed by mutual agreement at 4:24 p.m.,

to be reconvened. ECF 11, at 3.

The documents Mr. Moos produced in response to the 2024 subpoena are the same documents Pillar voluntarily delivered to him on March 30, 2021 after his departure from the company. Moos Resp. at 4–7. As Mr. Moos testified to and as detailed in his Response, those same documents had been produced in nine prior productions across multiple Phillips-related lawsuits — without privilege objection by Pillar, TCI, or any other Phillips Related Party. *Id.* Mr. Moos and his counsel applied redactions to communications they identified as potentially involving Pillar lawyers, and Judge Hoffman of the 68th Judicial District Court denied Pillar's same-documents Motion to Compel in *Pillar Income Asset Management v. ABC Land Investments, LLC* on May 19, 2025. *Id.* at 4–7, 19.

Between September 17, 2024 and May 1, 2026 — more than nineteen months — the Phillips Related Parties demanded the *completion* of Mr. Moos's deposition through ten separate filings or communications.[3] At no point during that nineteen-month period did they file a motion for protective order with respect to the documents in Mr. Moos's possession, seek snap-back relief, request in camera review, or identify any specific privileged document. Two filings during this period merit emphasis. On July 17, 2025, Mr. Madden — counsel both for the Phillips defendants and for the Pillar-controlled HRS and JRG intervenors — filed a Motion to Compel the Completion of the Moos Deposition that sought *more* deposition testimony, not less. The motion's only privilege reference appears in a footnote acknowledging "the attorney-client privilege *Mr. Moos believed was held* by his former employers, Pillar Income Asset Management, Inc. and Transcontinental Realty Investors, Inc." ECF 94 at 2 n.2 (emphasis added). The framing matters:

---

[3]Those filings include: (i) Pillar's Motion to Quash, Responses, Objections, and Motion for Protective Order, filed September 27, 2024, ten days after the Moos deposition, invoking Tex. R. Civ. P. 176.1 and "the attorney-client privilege and the attorney work product doctrine," Nikezic Decl. Ex. 4-E — without objection to the Moos production and without identifying any specific compromised document; (ii) Cunningham Swaim's January 22, 2025 Motion to Quash the Fourth Re-Notice of TCI's and Fifth Re-Notice of Pillar's depositions on behalf of both TCI and Pillar as "Movants," Nikezic Decl. Ex. 4-G; and (iii) Pillar's and TCI's separate May 13, 2025 Rule 199.2(b) deposition-topic objections, Nikezic Decl. Ex. 4-H.

Pillar- and TCI-aligned counsel framed the privilege as Mr. Moos's subjective belief, not as a party-level privilege assertion by anyone. Throughout this nineteen-month period, no Phillips-related party — including Pillar and TCI, who were by then represented by Cunningham Swaim — asserted privilege at the party level. Plaintiffs filed this federal action on March 4, 2026, on the eve of the rescheduled Moos deposition. Moos Resp. at 8–9; ECF 1–3.

### D.  The Parallel Bennett Weston Discovery Dispute

A parallel state-court discovery dispute has been ongoing in the Petryliene Lawsuit over the related files of Bennett Weston, the outside transactional law firm that was directly involved in the Villager and Farnham acquisitions and the subsequent transfers.

Between 2021 and 2024, Intervenors served four sets of document requests on Bennett Weston seeking documents related to those transactions. Bennett Weston, represented by Mr. Madden, produced approximately thirty documents and asserted a generalized privilege objection to the remainder — without producing a privilege log. On October 31, 2024, Intervenors filed an Amended Motion to Compel against Bennett Weston seeking the withheld documents. The state court held evidentiary hearings on the motion to compel over three days: December 3, 2024, January 2, 2025, and January 9, 2025. App. 0305 (Pillar/TCI Mandamus Intervention at 3).

At those hearings, Mr. Moos testified about Bennett Weston's role in the underlying transactions, and that Pillar had jointly engaged Bennett Weston for both Ms. Petryliene's entities and the TCI-affiliated counterparties to the same transactions. *See* App. 0261–66 (Jan. 9, 2025 Hr'g Tr. 19–24). The contemporaneous documentary record corroborated that testimony: Bennett Weston's May 28, 2019 letter to HUD, signed by name partner Jay LaJone, certified that the firm represented Big River NV, LLC in the Villager transaction; and Bennett Weston's parallel HUD certification letter for the Farnham transaction, signed by Ms. Petryliene herself, certified the same for Big River Farnham, LLC. *Id.* Mr. Madden — appearing in his dual roles as Bennett Weston's counsel and as counsel for the Phillips defendants — was present at every hearing. He did not assert any Pillar or TCI privilege objection to Mr. Moos's testimony, and he did not raise any

disqualification ground concerning Mr. Johansen. To the contrary, Mr. Madden conceded on the record that "[t]he privilege being asserted here is the privilege that [Bennett Weston] didn't assert, that [Bennett Weston] can't waive, that is owned by Pillar and TCI," and that "Bennett, Weston, LaJone is not asserting any privilege. The privilege is being asserted by Pillar and TCI." *Id.* at 37, 40–41. At the January 2, 2025 hearing, while addressing a separate point, Mr. Madden stated on the record: "I know there is a disqualification issue. I know that Pillar and TCI have sent Mr. Johansen letters regarding this. When they ever became a party to this proceeding, they would surely raise those." App. 0246 (Jan. 2, 2025 Hr'g Tr. 27).

At the January 9, 2025 hearing, Intervenors argued that they were joint clients of Bennett Weston — as Bennett Weston had represented their interests in the Villager and Farnham transactions, including by certifying that representation in its contemporaneous correspondence and submissions to HUD — and that the resulting files belong to Intervenors, not Pillar, under the displaced-manager rule established in *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343 (1985). App. 0260–66, 0293–95 (Jan. 9, 2025 Hr'g Tr. 18–24, 51–53). Mr. Madden responded that the joint-client exception under Tex. R. Ev*id.* 503(d)(5) did not apply because Pillar and TCI — the entities asserting the privilege — were not yet parties to the Petryliene Lawsuit. *Id.* at 42–44. The state court rejected that argument.

On September 25, 2025, the state court rejected Bennett Weston's privilege defense and granted Intervenors' Motion to Compel, ordering Bennett Weston to produce all the documents Pillar and TCI claim are privileged. App. 0305–06 (Pillar/TCI Mandamus Intervention at 3–4). Bennett Weston filed a Petition for Writ of Mandamus in the Fifth Court of Appeals on October 16, 2025; the Court of Appeals granted an emergency stay on October 17, 2025, which remains in effect. *Id.* On November 14, 2025 — eleven days after the NDA was executed — Pillar and TCI themselves intervened in the Bennett Weston mandamus, asserting privilege over the very same documents Intervenors claim under *Weintraub*. *Id.* The present Motion to Disqualify, filed less than four months later, asks this Court to grant on a federal docket the privilege protection the state court declined to grant in the Bennett Weston proceeding — and to do so before the Fifth Court of

9

Appeals has resolved the mandamus.

### E.  <u>The October 2024 Demand Letters and the October 2025 Joinder</u>

On October 23, 2024, Mr. Swaim wrote Mr. Johansen on behalf of Pillar and TCI, asserting that Mr. Johansen was "disqualified" under *In re Meador*, 968 S.W.2d 346 (Tex. 1998), and *In re RSR Corp.*, 475 S.W.3d 775 (Tex. 2015). Moos App. 003 (Johansen Decl. ¶ 9); Moos App. 006 (Oct. 23, 2024 Swaim Letter). Mr. Johansen responded in detail on October 29, 2024 and again on November 19, 2024 (Exs. A-2, A-4). Mr. Swaim wrote once more on November 1, 2024 (Ex. A-3) and did not respond to Mr. Johansen's November 19, 2024 letter.

Separately, in an October 7, 2024 supplemental brief filed in the Petryliene Lawsuit on behalf of ARI and IORI, Mr. Swaim conceded — while still styling Pillar and TCI as "non-parties" — that "the Plaintiffs have engaged in separate third-party discovery requests of TCI and Pillar — the entities actually involved in the underlying transactions made the basis of this suit and about which discovery is sought." App. 0139 (ARI/IORI Supp. Briefing at 3) (emphasis added). The admission matters for two related reasons. First, by Pillar's and TCI's own counsel's admission, Pillar and TCI were the operative actors in the very transactions out of which the communications they now claim as privileged arose — confirming the substantive overlap that gives rise to the *Weintraub* displaced-manager analysis. Second, Pillar's and TCI's selective invocation of non-party status — claiming non-party status to avoid party-level obligations in the state court yet now claiming party-level privilege rights to remove Mr. Moos's counsel in federal court — illustrates the strategic, opportunistic nature of the privilege assertion. Despite this admitted involvement, Pillar and TCI did not file any disqualification motion in the state court at the time.

The October 2024 demand letters arose against a longer joinder backdrop. Since early 2024, Intervenors had been bringing to the state court's attention the need to amend the scheduling order and an amended petition to join Pillar, TCI, and the other Pillar-related defendants identified during discovery as the ultimate parties in interest — operating through single-purpose shell entities ultimately controlled entirely by Pillar. After numerous hearings, the court allowed

Intervenors to file a proposed Second Amended Petition along with their Motion to Amend and Add Parties, which was filed on October 14, 2024. The Court ultimately granted the motion on October 15, 2025, pursuant to which Pillar, TCI, Villager FWB Apts, and Farnham Park PATX were added as party-defendants in the Petryliene Lawsuit. App. 0010–11 (Second Am. Pet. ¶¶ 17–22). Pillar and TCI did not file a motion to disqualify Mr. Johansen in the state court at any point — or any other motion related to the documents produced by Mr. Moos.

### F. <u>The November 3, 2025 NDA and the May 2026 Three-Motion Sequence</u>

The NDA that Plaintiffs use to bring this action was made effective on November 3, 2025 — more than thirteen months after the Moos deposition and twelve months after Mr. Swaim's October 23, 2024 demand letter to Mr. Johansen. Appendix A of the NDA enumerates seven "Moos Related Parties" by name; Mr. Johansen is not listed. Intervenors are not parties to the NDA and are not bound by its terms — Appendix A's catchall provision expressly excludes them: "[T]he Parties . . . excluding Plaintiffs, Intervenors, Third Party Defendants and the Phillips Related Parties." NDA, App. A (emphasis added). Notwithstanding any purported restrictions in the NDA, Section 4(A) further carves out from the NDA's restrictions "[a] response to a duly served and otherwise valid and enforceable discovery obligation . . . arising from an oral deposition." NDA § 4(A); *see* Tex. R. Civ. P. 199.5(a)(1) (witness "is under a duty to testify").

Mr. Moos appeared at the September 17, 2024 deposition under a duly issued subpoena. No deficiencies in the subpoena, or in its time, place, or form, were timely raised by any party — including the Phillips Related Parties, who, by the time of the Moos subpoena, had filed more than seventeen motions to quash twenty-six depositions in the Petryliene Lawsuit, many of them directed even at third-party subpoenas. App. 0341 (Handal Decl., May 29, 2024 ¶ 24). Once the deposition began and did not conclude, all counsel agreed it would be reconvened, and Mr. Moos remained under subpoena. Irrespective of how Plaintiffs now characterize his appearance — and notwithstanding the post hoc subpoena defects they belatedly assert — Mr. Moos was not under any NDA restriction at the time of his appearance. Once he appeared, he remained under subpoena

"from day to day until the deposition is begun and completed." Tex. R. Civ. P. 199.5(a)(1); Tex. R. Civ. P. 176.6(a).

Between May 1 and May 12, 2026 — after this Court denied Plaintiffs' TRO (ECF 17), and having been unable to obtain the result they sought to stop Mr. Moos's deposition that they had themselves coordinated and agreed to — Plaintiffs and their affiliates went on the offensive targeting Mr. Moos's attorney (and Intervenors' counsel), Mr. Johansen. In a scorched-earth attempt, they filed three motions: (i) two Motions to Disqualify in this action (ECF 21 and ECF 23); (ii) a motion to disqualify Mr. Johansen and Blank Rome filed on May 11, 2026 in another action, *Liberty Bankers Insurance Co. v. NT Fiber*, which Plaintiffs withdrew at the hearing before Judge Hoffman; and (iii) a Motion to Quash the Notice of Continued Oral Deposition of Mr. Moos filed in the Petryliene Lawsuit on May 12, 2026. App. 0312 (State-Court Mot. to Quash, May 12, 2026).

The third motion warrants additional context. After Intervenors sought to reschedule Mr. Moos's deposition following this Court's TRO denial — and following Plaintiffs' interruption of the previously scheduled deposition through the filing of this action on the eve of that deposition — Intervenors sought deposition dates from the Plaintiffs in the Petryliene Litigation. Despite multiple attempts, counsel for Plaintiffs did not respond. When Intervenors issued the subpoena based on the dates they had previously provided to Plaintiffs, Plaintiffs filed the May 12, 2026 Motion to Quash without any conferral with Intervenors. The Motion uses this federal action as a weapon to stop the deposition: it expressly invokes this federal motion as grounds for state-court deferral, arguing that proceeding with the deposition "would potentially moot the federal court's ability to provide meaningful relief, create a risk of irreparable harm to Movants' attorney-client privilege, and allow an end-run around the NDA's protections." *Id.* at 5. The state-court motion thus asks the state court to defer to this federal motion, while this federal motion asks this Court to remove Mr. Johansen from his state-court representation. *Cf. Donovan v. City of Dallas*, 377 U.S. 408, 412–13 (1964). Pursuant to Tex. R. Civ. P. 199.4, a timely motion to quash automatically stays the deposition until the motion can be determined, thus forcing Intervenors to undergo

12

additional motion practice in a state-court schedule that is already constrained: Intervenors' own Motions to Compel have been pending since last year and have not yet been able to be heard.

### G. The Motion's Direct Effect on Intervenors

The federal motion is captioned against Mr. Johansen as Mr. Moos's counsel. Its direct effect, however, falls on Intervenors. Mr. Johansen has served as Intervenors' Texas local counsel of record in the pending Petryliene Lawsuit since October 8, 2024 — more than eighteen months. Moos App. 003 (Johansen Decl. ¶ 8). Intervenors' Counterclaim in Intervention (ECF 19) seeks declaratory relief on the same NDA and deposition issues this motion raises. Mr. Moos remains a critical fact witness with firsthand executive-level knowledge of the Villager and Farnham transactions at a unique level — knowledge not within the possession of any other available witness — given his role as former CEO of Pillar and TCI and his unique involvement in the transactions at issue.

Critically, the present Motion to Disqualify does not identify any specific document at issue. ECF 20, 21. In thirty pages of briefing, Plaintiffs do not identify a single specific communication from Mr. Moos's August 23 or September 9, 2024 productions that they claim Mr. Johansen reviewed or that they claim has been compromised. They invoke the abstract category of "attorney-client privileged communications" but do not point to any specific entry from their own 200-entry privilege log, and do not point to any specific document Cooper or any other declarant identifies.

### III. ARGUMENT

Defendant Moos's Response sets out the law governing disqualification of his own counsel, and Intervenors adopt and incorporate that analysis. Moos Resp. at 12–25. The relief Plaintiffs seek is targeted at Mr. Johansen as counsel for Moos. Its practical effect, however, is to deprive Intervenors of their independent state-court counsel of record in the Petryliene Lawsuit and to moot the Counterclaim in Intervention this Court permitted on April 9, 2026 (ECF 17). Intervenors therefore have direct standing to respond, and supplement Moos's brief on points unique to the

Intervenor posture.

### A.  Plaintiffs Failed to Confer in Violation of L.R. 7.1(a)

The motion should be denied on the threshold procedural ground that Plaintiffs failed to confer in compliance with N.D. Tex. Local Rule 7.1(a). The Certificate of Conference (ECF 21, at 25) recites only that counsel "conferred in March and April 2026 with Blank Rome's General Counsel and partners" and that counsel for Pillar and TCI wrote to Blank Rome's General Counsel "detailing the conflicts and demanding withdrawal within three business days." A demand for capitulation is not a good-faith effort to resolve the matter by agreement. Plaintiffs wrote to Blank Rome's institutional ethics counsel — not to Intervenors' counsel of record, who would be directly affected. Plaintiffs never sent a conferral email to Intervenors' counsel alerting them that the motion would be filed or seeking their position. *See Aetna Health Inc. v. Health Goals Chiropractic Ctr., Inc.*, No. 3:12-CV-2587-O, 2012 WL 12873819, at *1 (N.D. Tex. Oct. 25, 2012) (O'Connor, J.).[4]

### B.  The NDA Does Not Reach Intervenors or Mr. Johansen

Intervenors are non-signatories to the NDA. The NDA's Appendix A enumerates the "Moos Related Parties" by name: "Cobblestone Ventures II, LLC; Cobblestone Ventures III, LLC; Cobblestone Ventures Partners, LP; CS Abode Holdings, LLC, and subsidiaries; Daniel Moos; Deborah Moos; HGH Residential, LLC." NDA, App. A. The Appendix continues: "The Moos Related Parties include the Parties (as broadly defined herein but excluding Plaintiffs, Intervenors, Third Party Defendants and the Phillips Related Parties)." *Id.* (emphasis added). Neither Mr. Johansen nor Intervenors are listed in Appendix A, and Intervenors are expressly excluded by the parenthetical.

#### 1. Mr. Johansen Is Not a "Moos Related Party" Under the NDA's Own Drafting.

Mr. Johansen is not a "Moos Related Party" under the NDA's own terms, and treating him

---

[4]A motion filed without good-faith conferral with counsel of record — and as part of a coordinated three-motion sequence (see Facts § F) — does not satisfy L.R. 7.1(a).

as one would rewrite the agreement rather than enforce it.

The drafters knew how to reach attorneys when they wanted to. The NDA uses the words "counsel," "attorney," and "lawyer" elsewhere in the agreement — the signature pages have separate lines for "Counsel for Moos and the Moos Related Parties" and "Counsel for the Phillips Related Parties," NDA Sig. Pp. (ECF 1-1), and Section I permits disclosure of the NDA's terms to "the Parties' attorneys," NDA § I. None of those words appears in Appendix A's enumeration of "Moos Related Parties." The omission is presumed deliberate. *See PlainsCapital Bank v. Martin*, 459 S.W.3d 550, 556 (Tex. 2015) ("we presume the words in a statute are selected with care and we interpret them in a manner that gives meaning to all of them without disregarding some as surplusage").

The NDA's structure confirms the point. "Moos Related Parties" — the persons identified in Appendix A — are bound by the NDA's substantive restrictions, including the prohibition on voluntary participation in legal process (§ 4) and the return-or-destroy obligation (§ 5). "Representatives" is a separate term used in § 2(B) to identify persons for whom the Moos Related Parties are responsible for "enforcing this NDA." A Representative is not himself contractually bound; he is a person the signatory must endeavor to police. Mr. Johansen, at most, would be Moos's Representative under § 2(B). Sweeping him into the substantively bound category collapses two concepts the drafters separated.

### 2. Appendix A Expressly Excludes Intervenors.

Beyond Appendix A's silence as to Mr. Johansen, Appendix A's catchall is explicit: "The Moos Related Parties include the Parties (as broadly defined herein but excluding Plaintiffs, Intervenors, Third Party Defendants and the Phillips Related Parties)." NDA, App. A (emphasis added). Intervenors are non-signatories and are expressly excluded by the agreement's own terms. The intent to bind a non-signatory must be clearly written or evidenced in the contract. *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1077 (5th Cir. 2002); cf. *Baker v. General Motors Corp.*, 522 U.S. 222, 238 (1998); *Franlink Inc. v. BTDS, Ltd.*, 50 F.4th 432, 441 (5th Cir. 2022).

15

### 3. The NDA Was Executed With Full Knowledge and Cannot Reach Pre-NDA Conduct.

By November 3, 2025, Pillar, TCI, and the other Phillips Related Parties had known of Mr. Johansen's representation of Intervenors and of the documents at issue for more than a year. *See* Facts §§ C–E. The conduct Plaintiffs invoke as the disqualifying breach occurred on August 23 and September 9, 2024 (productions) and September 17, 2024 (deposition) — more than fourteen months before the NDA took effect. The NDA contains no retroactivity clause and cannot retroactively transform pre-NDA conduct into a breach. Asserting an Anti-Injunction Act federalism defense that this Court accepted in ECF 17 cannot, in any event, be a contractual breach. *See E.R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 138 (1961).

### C. Pillar and TCI Lack Standing

The Fifth Circuit has held since 1976 that a non-client generally lacks standing to seek disqualification of opposing counsel; absent an attorney-client relationship, the duties of loyalty and confidentiality on which the disqualification remedy rests do not arise. *In re Yarn Processing Patent Validity Litig.*, 530 F.2d 83, 88–90 (5th Cir. 1976). The recognized exceptions — duty owed and interest in the just determination of the litigation — are narrow. *Colyer v. Smith*, 50 F. Supp. 2d 966, 971–72 (C.D. Cal. 1999). Pillar and TCI satisfy neither.

Mr. Johansen has never represented Pillar or TCI; he has been their adversary for five years. Pillar's and TCI's own corporate representative confirmed under oath in May 2025: "Daniel Moos has an adversarial position to both Pillar and TCI. He's in litigation with both of those companies." App. 0233 (Johnson Dep. Tr. 83:18–22). The interest-in-just-determination exception fails as well: Pillar and TCI have actively litigated their privilege interests through the state-court procedural mechanisms designed for that purpose, and have lost on the merits before Judge Hoffman. ECF 11-6. Disqualification motions can themselves be misused as a technique of harassment. *Cf. FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1316 (5th Cir. 1995). Plaintiffs cannot disclaim party status in state court for tactical advantage — Madden's January 2, 2025 record acknowledgment that Pillar and TCI would raise disqualification only "when they ever became a party to this proceeding"

16

(App. 0246 (Jan. 2, 2025 Hr'g Tr. 27)) confirms the strategic choice — and then invoke standing in federal court to obtain what state-court status they had repudiated. *Cf. New Hampshire v. Maine*, 532 U.S. 742, 749–51 (2001); *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011) (en banc).

### D. The Privilege Premise Fails: Intervenors Hold the Privilege Under Weintraub.

The motion's premise is that Mr. Johansen "knew the materials were Pillar's and TCI's attorney-client privileged communications." ECF 21, at 17. The premise fails on three independent grounds.

The Supreme Court held in *Commodity Futures Trading Comm'n v. Weintraub* that "[w]hen control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well. . . . Displaced managers may not assert the privilege over the wishes of current managers." 471 U.S. 343, 349 (1985). Texas follows that rule: "[T]he privilege belongs to the corporation. Only the corporation may permit access to its attorney-client communications." *In re Marketing Investors Corp.*, 80 S.W.3d 44, 50 (Tex. App.—Dallas 1998, orig. proceeding).

The Second Amended Petition pleads the relevant control sequence: Big River NV acquired 100% of IGCH Villager Associates, Ltd. in 2015–2016; Big River Farnham acquired 100% of AMG Farnham Park, LLC in December 2018; HUD approved the latter Transfer of Physical Assets on July 15, 2019. App. 0024–27 (Second Am. Pet. ¶¶ 89, 92, 94, 105, 107, 109–110). From those dates forward, IGCH and AMG were under Intervenor control. The privilege over communications concerning those entities passed to Intervenors at the moment of acquisition. Pillar concedes Pillar is not the privilege holder: "Pillar acted as agent and advisor to Transcontinental Realty Investors, Inc., who, directly or indirectly, was the client." App. 0198 (Pillar/TCI 200-Entry Privilege Log). The privilege belongs at most to TCI; and from 2015–2019 forward, it no longer belongs to TCI.

The motion's contrary theory — that Mr. Johansen had an independent obligation to assert

17

privilege on Pillar's and TCI's behalf — has no basis in Texas law.[5] Further, Cooper's Declaration ¶ 25 concedes: "None of the files that were reviewed and returned to Moos contained information relating to the Villager or Farnham transactions." ECF 20-2 ¶ 25. The Petryliene Lawsuit concerns only the Villager and Farnham transactions. The disqualification motion cannot rest on a privilege premise that Plaintiffs' own evidence denies.

The Motion presupposes that TCI, Pillar, IGCH Villager, and AMG Farnham share a single, undifferentiated privilege — but Plaintiffs identify no authority that collapses separate corporate entities into one client, and the controlling principle is the opposite: privilege is entity-specific, and a parent corporation does not hold its subsidiary's privilege. Plaintiffs have advanced this same theory before. In the parallel state-court proceeding, Pillar's and TCI's counsel invoked *Basic Capital Mgmt. v. Dynex* Commercial, 348 S.W.3d 894 (Tex. 2011), to argue that TCI, Pillar, IGCH Villager, and AMG Farnham "are all treated as one big client." App. 0298–99 (Jan. 9, 2025 Hr'g Tr. 56:18–57:24). Judge Slaughter rejected the framing in plain terms: "the privilege belongs to the subsidiary — right? — not to the parent." *Id.* at 55:18–56:1. And Basic Capital does not save the theory: the decision concerns third-party-beneficiary contract rights and has nothing to say about attorney-client privilege across affiliated entities. 348 S.W.3d at 898–902. Plaintiffs' recycled framing fails for the same reasons it failed in state court.

### E. On the Meador/RSR Merits, the Decisive Factors Weigh Against Disqualification.

#### 1. *Meador Does Not Govern Documents Received Through the Normal Course of Subpoenaed Discovery.*

*Meador*'s six factors "apply only when a lawyer receives an opponent's privileged materials outside the normal course of discovery." *In re Parnham*, 263 S.W.3d 97 (Tex. App.—Houston [1st Dist.] 2006, orig. proceeding). When privileged material is produced in the ordinary

---

[5]Plaintiffs argue (ECF 21, at 24) that Mr. Johansen owed a "dual obligation" to assert privilege on Pillar's and TCI's behalf — entities he did not represent. The Texas Court of Appeals has held that an attorney's authority to assert privilege runs to his own client; he has no authority to assert privilege on behalf of a non-client. *In re Houseman*, 66 S.W.3d 368, 372 (Tex. App.—Beaumont 2001, no pet.).

course of subpoenaed discovery, *Meador* does not govern. The snap-back rule of Tex. R. Civ. P. 193.3(d) does, and it does not authorize disqualification.

Mr. Moos's productions on August 23 and September 9, 2024 were responses to a valid subpoena duces tecum served in state-court litigation. They were transmitted through automated state-court eService — Cunningham Swaim had appeared on behalf of Pillar in February 2024, placing it on the eFile service list for all subsequent filings, see Tex. R. Civ. P. 21a(a)(1). No defense counsel raised a privilege objection during the ten-day notice period under Tex. R. Civ. P. 205.2, at the deposition itself, or at any point until October 23, 2024. The *Meador* framework is, at most, analogically relevant. It is not directly applicable, and its more demanding factors do not apply here.

Plaintiffs cite *In re American Airlines, Inc.*, 972 F.2d 605 (5th Cir. 1992), in support of disqualification. ECF 21, at 12. *American Airlines* is a side-switching case: an attorney moved from representing American to representing its adversary in substantially related litigation. 972 F.2d at 610. Mr. Johansen has never represented Pillar or TCI. He has been their adversary for five years across four state-court matters. *American Airlines* supports Mr. Johansen, not Plaintiffs.

Plaintiffs rely on *In re Marketing Investors Corp.*, 80 S.W.3d 44 (Tex. App.—Dallas 1998, orig. proceeding) but it is inapposite. ECF 21, at 18. There, a terminated employee covertly took corporate documents and his attorney did not notify the corporation of his receipt of the documents. 80 S.W.3d at 51. The Texas court of appeals therefore disqualified the attorney. Here, the inverse is true. Pillar's HR Department and in-house counsel voluntarily delivered the documents to Mr. Moos's assistant on March 30, 2021, retained the originals, and made no objection through nine subsequent productions of the same documents across the Pillar Lawsuit, the ABC Land Lawsuit, and the HGH Case. Moos Resp. at 4–7. Plaintiffs' twenty-two months of active state-court privilege practice — with privilege log, motions to quash, and the same-documents motion to compel lost on the merits before Judge Hoffman — compounds the fault on Plaintiffs' side. *Marketing Investors*' Factor 5 was decisive against the employee there. The same factor here is decisive against Plaintiffs.

19

### F. Nitla's "Actual Harm and No Lesser Remedy" Test Independently Defeats the Motion.

The Texas Supreme Court in *In re Nitla S.A. de C.V.* requires the movant seeking disqualification based on receipt of allegedly privileged material to show (1) actual harm from the alleged review, and (2) that disqualification is necessary because no lesser remedy can address the harm. 92 S.W.3d 419, 423 (Tex. 2002). Plaintiffs satisfy neither prong, and the deficiency on each prong is independently dispositive.[6]

The "actual harm" prong requires concrete prejudice to specific claims or defenses, not abstract concern. *Nitla*, 92 S.W.3d at 422–23. The Texas Supreme Court reaffirmed this requirement in *In re Murrin Brothers 1885, Ltd.*, holding that even where a disciplinary rule violation is established, the party requesting disqualification must also show it will suffer prejudice if disqualification is not granted, and that the existence of alternative remedies makes the severe remedy of disqualification unnecessary. 603 S.W.3d 53, 56–58 (Tex. 2019). The San Antonio Court of Appeals echoed the point in *In re Southwestern Bell Yellow Pages, Inc.*, 141 S.W.3d 229, 232 (Tex. App.—San Antonio 2004), reversing a disqualification order because the mere allegation of potential prejudice is insufficient to warrant the extreme remedy of disqualification. *Accord Smith v. Abbott*, 311 S.W.3d 62, 73 (Tex. App.—Austin 2010); *Hendricks v. Barker*, 523 S.W.3d 152, 158 (Tex. App.—Houston [14th Dist.] 2016); *Busby v. Harvey*, 551 S.W.3d 184, 190 (Tex. App.—Fort Worth 2017).

Plaintiffs' motion fails the actual-harm prong on a striking record. Pillar and TCI have a 200-entry state-court privilege log identifying with specificity the documents they claim are privileged. App. 0195 (Pillar/TCI 200-Entry Privilege Log). Yet in thirty pages of federal briefing, Plaintiffs do not identify a single specific document from that log — or any other privileged

---

[6]*Coral Reef of Key Biscayne Developers, Inc. v. Lloyd's Underwriters at London*, 911 So.2d 155 (Fla. 3d DCA 2005) (applying *Nitla* framework: where documents received pursuant to facially valid process, the mere possibility of an unfair tactical advantage is insufficient to justify disqualification; the moving party must demonstrate both actual harm and the absence of lesser remedies); *Harleysville Ins. Co. v. Holding Funeral Home, Inc.*, No. 1:15-cv-00057, 2017 WL 1041600 (W.D. Va. Feb. 9, 2017) (disqualification analysis is fact-specific and requires concrete prejudice rather than mechanical application of ethical rules).

document — that they claim Mr. Johansen reviewed, that they claim has been compromised, or that they claim will prejudice any specific claim or defense in this NDA enforcement action. They invoke the venerated status of privilege in the abstract, but after twenty-two months of state-court privilege practice and a fully developed Rule 193.3 log, they cannot identify one concrete document at issue.

The movant must delineate specific facts that tie the former and current representations together, and a general invocation of confidential information is insufficient where the movant fails to link those materials to the issues in the current case. *In re Brown & Root Indus. Servs., LLC*, No. 14-24-00608-CV, 2025 WL 597062, at *2 (Tex. App.—Houston [14th Dist.] Feb. 25, 2025). Cooper's own ¶ 25 admission confirms why no link can be drawn: "None of the files that were reviewed and returned to Moos contained information relating to the Villager or Farnham transactions." ECF 20-2 ¶ 25.

Second, Plaintiffs cannot satisfy the necessity prong because they have used the lesser tools and exhausted them on the merits. Pillar and TCI deployed the full Texas non-party defense framework for twenty-two months. Their state-court filings invoked the protections on behalf of Pillar and TCI repeatedly even before they were formally joined as parties. After joinder as defendants on October 15, 2025, they had every party-level state-court remedy available, including a Texas-court motion to disqualify, and did not invoke any of them. They went to a different forum instead.

The full complement of statutory and procedural lesser remedies remains available: in camera review, *Nitla*, 92 S.W.3d at 421–22; return of documents, *Meador*, 968 S.W.2d at 350; Rule 193.3(d) snap-back; and protective orders. Disqualification is not the necessary remedy — it is the remedy of last resort. Plaintiffs have pursued the lesser means, lost on them, and now seek through a different forum the relief they could not obtain in state court.

### G. **Plaintiffs Waived the Disqualification Remedy**

As noted by the Supreme Court of Texas, disqualification is a "severe remedy" and when

considering disqualification motions, "courts must adhere to an exacting standard . . . to discourage their use as a dilatory trial tactic." *In re RSR Corp.*, No. 18-0189, 2019 WL 638769, at *3 (Tex. Feb. 15, 2019) (quoting Spears v. Fourth Court of Appeals, 797 S.W.2d 654, 656 (Tex. 1990)); see *Grant v. Thirteenth Court of Appeals,* 888 S.W.2d 466, 468 (Tex. 1994) (orig. proceeding) (supp. op. on reh'g) ("The untimely urging of a disqualification motion lends support to any suspicion that the motion is being used as a tactical weapon."). Failure to timely seek disqualification constitutes waiver. *Id.; see Stonecoat of Texas, LLC v. Procal Stone Design, LLC*, No. 4:17-CV-00303, 2019 WL 9899506, at *1 (E.D. Tex. Mar. 8, 2019) (finding waiver where plaintiffs failed to timely seek disqualification). Texas courts find waiver well short of the delay here.[7]

This Motion was filed twenty months after the Moos deposition. Throughout that period, Pillar, TCI, and the other Phillips Related Parties not only failed to seek disqualification but affirmatively demanded the completion of Moos's deposition through a year-long sequence of demands and a July 17, 2025 state-court Motion to Compel Completion of the Deposition. Pillar's state-court appearances in the Petryliene Lawsuit go back to February 2024 — twenty-two months before the federal motion was filed. And on January 2, 2025, Mr. Madden expressly acknowledged on the record that Plaintiffs were aware of the disqualification issue but were holding it back for a federal forum. That is not delay; it is strategic deferral. Litigating for nearly two years while reserving the disqualification argument for tactical use is the use of a disqualification motion as a negotiating tool. *HECI Exploration Co.* v. Clajon Gas Co., 843 S.W.2d 622, 627 (Tex. App.—Austin 1992, writ denied). It is also the intentional conduct inconsistent with the right that RSR II identifies as waiver. 568 S.W.3d at 666; accord *In re Zaidi*, No. 24-0245, 2026 WL 969266 (Tex.

---

[7]*See In re Kyle Fin. Grp., LLC*, 562 S.W.3d 795, 800 (Tex. App.—Houston [14th Dist.] 2018, orig. proceeding) (thirteen-month delay waives as a matter of law); *Vaughan v. Walther*, 875 S.W.2d 690 (Tex. 1994) (per curiam) (six-month delay waives); *Buck v. Palmer*, 381 S.W.3d 525, 528 (Tex. 2012) (seven-month delay waives); *In re Interest of Kahn*, 533 S.W.3d 387, 391–92 (Tex. App.—Houston [14th Dist.] 2017, orig. proceeding) (multi-factor waiver analysis: time period, dilatory-tactic evidence, scope of discovery completed, prejudice to opposing party).

Apr. 10, 2026) (failure to timely seek disqualification constitutes waiver).

Mr. Madden's January 9, 2025 statements to Judge Slaughter confirm the point. Mr. Madden told the court that "[t]he privilege being asserted here is the privilege . . . that is owned by Pillar and TCI," App. 0279 (Jan. 9, 2025 Hr'g Tr. 37:1–4), and that "Pillar and TCI are not parties to this action," *Id.* at 43:22–44:5. The federal motion now frames Pillar and TCI as primary aggrieved parties whose chosen-counsel rights were violated when Mr. Johansen reviewed Moos's production. The two framings cannot both be right.

The trigger for the federal filing is the state-court loss on the merits. On September 25, 2025, the 191st District Court granted Intervenors' Motion to Compel Bennett Weston. App. 0305–06 (Pillar/TCI Mandamus Intervention at 3–4). Bennett Weston obtained an emergency stay from the Fifth Court of Appeals on October 17, 2025, but the underlying trial-court order has never been reversed on the merits. Pillar and TCI intervened in the Bennett Weston mandamus on November 14, 2025; the federal disqualification motion followed on March 4, 2026. The chronology demonstrates the federal motion is not the response of a party without state-court remedies — it is the response of a party that used state-court remedies, lost at the trial-court level, intervened at the appellate level, and then sought a different forum.

As to privilege waiver, Pillar, TCI, and the other Phillips Related Parties received notice of both pre-deposition productions, attended the deposition through Madden, and made no objection. Failure to object at the deposition is itself privilege waiver. *Delaporte v. Preston Square, Inc.*, 680 S.W.2d 561, 564 (Tex. App.—Dallas 1984, no writ).[8]

### H. <u>Disqualification Violates the Federalism Principles This Court Already Applied in ECF 17.</u>

On April 9, 2026, this Court held that the Anti-Injunction Act, 28 U.S.C. § 2283, prohibits federal interference with the state-court Petryliene proceeding. ECF 17, at 2–3 (citing *Atlantic*

---

[8] *See also, Methodist Home v. Marshall*, 830 S.W.2d 220, 224 (Tex. App.—Dallas 1992, no writ); *T&W Holding Co., LLC v. City of Kemah*, 641 F. Supp. 3d 378, 392–94 (S.D. Tex. 2022); *Nguyen v. Excel Corp.*, 197 F.3d 200, 208 (5th Cir. 1999).

*Coast Line R.R. Co. v. BLE*, 398 U.S. 281, 287 (1970), and *United States v. Billingsley*, 615 F.3d 404, 409 n.10 (5th Cir. 2010)). Mr. Johansen is Intervenors' counsel of record in the pending Petryliene Lawsuit. Granting this motion would remove him from that state-court proceeding through federal-court order — the precise interference § 2283 forbids. The Fifth Circuit construes "proceedings" to include "any proceeding supplemental or ancillary." *Billingsley*, 615 F.3d at 409 n.10.

*Younger* abstention reinforces the same result, because regulating attorneys practicing before state courts is among the state interests at the core of the doctrine. *See Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013); *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 434 (1982). Plaintiffs' May 12, 2026 state-court motion to quash relies on the pendency of this federal motion as grounds for state-court deferral. App. 0316 (State-Court Mot. to Quash, May 12, 2026 at 4). That is precisely the forum interference the law forbids: a litigant cannot use one forum to halt proceedings in another. *Donovan v. City of Dallas*, 377 U.S. 408, 412–13 (1964).

### I.   <u>**The Drastic Remedy Disserves Intervenors' Unique Interests.**</u>

The Fifth Circuit treats disqualification as a severe and drastic remedy that requires a careful balancing of the public interest against the client's right to counsel of its choice before ordering disqualification. *FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1313, 1316 (5th Cir. 1995). The Texas Supreme Court has emphasized that the exacting standard is not satisfied by mere allegations of unethical conduct or a remote possibility of a disciplinary violation. *Spears v. Fourth Court of Appeals*, 797 S.W.2d 654, 656 (Tex. 1990); see also *In re Drake*, 195 S.W.3d 232, 235 (Tex. App.—San Antonio 2006, orig. proceeding); *In re TMD Defense* and Space, LLC, 649 S.W.3d 764, 773 (Tex. App.—El Paso 2022, orig. proceeding). And the Texas Supreme Court warned in Murrin Brothers that disqualification is particularly suspect where alternative remedies exist, 603 S.W.3d at 57 — as here, where Plaintiffs have used and exhausted the lesser state-court mechanisms.

Intervenors face specific harms no other party faces. Mr. Johansen has served as Intervenors' Texas counsel of record in the Petryliene Lawsuit for more than eighteen months and has developed case-specific knowledge that substitute counsel cannot replicate. The right to counsel of one's choice independently weighs against disqualification and can be overridden only on the clearest showing that no lesser remedy will suffice. Plaintiffs have made no such showing as to Intervenors. Intervenors are not parties to the NDA. They were excluded from Appendix A by name. They have committed no act of misconduct that Plaintiffs allege. Yet the relief Plaintiffs seek would strip them of their sole Texas counsel of record in an ongoing state-court action in which they are aligned plaintiffs — while Plaintiffs, represented by multiple firms across multiple proceedings, retain theirs. The three coordinated May 2026 motions share the single immediate effect of silencing Mr. Moos by going after him as well as his counsel.

## IV. CONCLUSION

For the reasons set forth above and in Moos's incorporated Response, Intervenors respectfully request that the Court DENY Plaintiffs' Motion to Disqualify Mark L. Johansen and Blank Rome LLP (ECF 20 and 23); deny the alternative requests for relief, including any request for expedited discovery; and grant such other and further relief as is just and proper.

Respectfully submitted,

/s/ Mary Nikezic
ROBERT F. SALKOWSKI - (*Pro Hac Vice pending*)
E-mail: rsalkowski@zarcolaw.com
MARY NIKEZIC (*Pro Hac Vice pending*)
E-mail: mnikezic@zarcolaw.com
ZARCO EINHORN SALKOWSKI, P.A.
2 S. Biscayne Blvd., 34th Floor
Miami, Florida 33131
Telephone: (305) 374-5418

MARK L. JOHANSEN
State Bar No. 10670240
Blank Rome LLP
200 Crescent Court, Suite 1000

Dallas, Texas 75201
Email: mark.johansen@blankrome.com

**ATTORNEYS FOR INTERVENORS**
**RENATA PETRYLIENE AND BIG RIVER NV LLC**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document was served on all counsel of record by email and/or via the Court's CM/ECF system on this the 28th day of May, 2026.

<u>/s/ Mary Nikezic</u>

26